UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| ANTOINE JOHNSON, M.D.,<br><br>Plaintiff,<br><br>v.<br><br>WILLAPA HARBOR HOSPITAL, et al.,<br><br>Defendants. | CASE NO. C07-5336BHS<br><br>ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |

This matter comes before the Court on Defendants' Motion for Summary Judgment. Dkt. 37. The Court has considered the pleadings filed in support of and in opposition to the motion and the remainder of the file and hereby grants the motion for the reasons stated herein.

**I. FACTUAL BACKGROUND**

Except when otherwise indicated, the following facts are taken in the light most favorable to Plaintiff Antoine Johnson ("Dr. Johnson"), the nonmoving party:

Dr. Johnson, an African-American, has been a licensed physician in the State of Washington since 2000. According to Dr. Johnson, he was an existing member of the Willapa Harbor Hospital ("Willapa") courtesy medical staff from approximately 2001 through 2006, and was under contract to "provide emergency room coverage on

ORDER - 1

weekends and holidays and on an as needed basis." Dkt. 44 at 3.[1] At the end of 2005, his privileges were to expire. On or about December 16, 2005, Dr. Johnson submitted an application for reappointment to the medical staff. Dr. Johnson submitted the following answers which are pertinent to Defendants' motion for summary judgment:

> 4. Have your privileges been reduced or revoked within the last year? *No.*
> 5. Have you ever received any type of sanction or are you under investigation by a hospital, state license agency, or other professional health care organization? *No.*
>
> * * *
>
> 8. Please list current hospitals (or clinics) that you are affiliated with, along with your status (active staff, courtesy, affiliate, etc.) . . . . ***Broadway Clinic [in Aberdeen, Washington].***

Dkt. 43, 5-6.

Dr. Johnson did not include Grays Harbor Community Hospital ("Grays Harbor") in his answer to Question 8. The application also included a section entitled "Washington Practitioner Attestation Questions." Dr. Johnson submitted the following answer in this section:

> 1. Have you ever been, or are you now in the process of being denied, revoked, suspended, restricted, reduced, limited, sanctioned, placed on probation, monitored, or not renewed for any of the following? Or have you voluntarily relinquished, withdrawn, or failed to proceed with an application for any of the following in order to avoid an adverse action or to

---

[1] Defendants state in their motion for summary judgment that Dr. Johnson was an existing member of the Willapa courtesy medical staff from approximately 2001 through 2005, while Dr. Johnson states he had privileges through 2006. Defendants state that Dr. Johnson's privileges expired at the end of 2005. The Court presumes that Dr. Johnson is partially correct, insofar as he held privileges through at least the application process through the end of 2006. However, it appears that his privileges actually extended through 2007. As will be discussed below, Dr. Johnson was granted privileges for the 2007 calender year after he challenged Defendants' December 2006 denial of his application for reappointment. Apparently, Dr. Johnson had privileges at Willapa at the time he filed this action. There also appears to be a dispute as to whether Dr. Johnson's medical staff category was "courtesy/contracted emergency room physician" as stated by Dr. Johnson or whether he was only a courtesy physician. In a February 2008 hearing, held after Dr. Johnson filed this action, the Willapa Board appears to have stated that Dr. Johnson was not contracted for emergency services. Dkt. 46 at 78 and 82. Dr. Johnson provided a copy of the Willapa bylaws in support of his statement that he was a contracted emergency room physician, but neither party provided the actual contract, so the terms of Dr. Johnson's contract is not clear.

ORDER - 2

1  preclude an investigation or while under investigation relating to professional competence or conduct [at any of the following]?

\* \* \*

(e) Clinical privileges at any facility, including hospitals, ambulatory surgical centers, skilled nursing facilities, etc. ***Yes.***

*Id.* at 8.

Kim Caudill, the credentialing clerk for Willapa, reviewed Dr. Johnson's application. In May of 2006, Ms. Caudill contacted Dr. Johnson to ask him several questions about his application. First, she asked Dr. Johnson why he had not listed privileges at Grays Harbor in his application. Ms. Caudill stated in a declaration that she was aware that Dr. Johnson had included this hospital in an earlier application. According to Ms. Caudill, Dr. Johnson informed Ms. Caudill that he did not list Grays Harbor because he was not an actual employee of that hospital. Ms. Caudill next asked Dr. Johnson why he did not list Grays Harbor on his reappointment application as currently having privileges. Dr. Johnson stated that there was a lapse in his status and he was currently going through the credentialing process. When Ms. Caudill asked Dr. Johnson the status of his privileges at Grays Harbor, he told Ms. Caudill that he was an "applicant physician." Dkt. 43, 1-2.

Ms. Caudill also contacted Grays Harbor requesting information relating to the privileges held by Dr. Johnson. According to Grays Harbor, Dr. Johnson's privileges had been suspended on September 3, 2004, which was subsequently lifted subject to certain conditions, and again suspended on November 26, 2004, for "failure to complete delinquent patient charts in a timely manner and failure to meet standards of care per [Grays Harbor] Medical Staff Bylaws." Dkt. 43 at 11. Grays Harbor also informed Ms. Caudill that Dr. Johnson was not currently being credentialed by Grays Harbor. *Id.* at 2.

Between August 1, 2005, and October 18, 2006, the Washington State Department of Health ("Department of Health") received four reports of alleged professional misconduct by Dr. Johnson and investigated the alleged misconduct. The Department of Health informed Dr. Johnson of each of these investigations. *Id.*, 22-25.

In December of 2006, Dr. Johnson met with representatives of Willapa to clarify issues relating to his application for reappointment. Dkt. 42 at 2. According to Defendants, Dr. Johnson confirmed that his medical privileges at Grays Harbor had been suspended and were later reinstated. Further, he told the representatives that he did not feel that he held staff privileges at Grays Harbor according to their bylaws, and, therefore, his privileges could not have been suspended. Dr. Johnson also acknowledged that he had been advised by the Department of Health that he received complaints regarding his medical practice, and he later provided the four letters he received from the Department of Health.

In his declaration, Dr. Johnson states that he "disclosed open complaints of unprofessional conduct which were subject to investigation to Defendants and that said complaints were all closed for lack of cause." Dkt. 45 at 2. Dr. Johnson does not explain how or when this disclosure was made. Dr. Johnson does not dispute Defendants' statement that the December 2006 meeting discussed above took place. Nor does Dr. Johnson deny that in his December 2005 application, he did not disclose the suspension of privileges at Grays Harbor or the Department of Health investigations. Rather, Dr. Johnson claims that he omitted information in his application because Defendants did not mail him the application until shortly before the expiration date of his privileges. Dr. Johnson alleges that he was rushed in filling out this application, and could not have provided correct information in the time before the application was due. Dkt. 44 at 17. Without providing any supporting evidence, Dr. Johnson alleges that white physicians were provided 60 days in which to "gather and submit" information relevant to their applications. Dkt. 44 at 20.

On December 29, 2006, Willapa sent a letter to Dr. Johnson advising him that his application had been denied. Dkt. 46, 61-63. According to that letter, Willapa medical staff reviewed Dr. Johnson's application in September of 2006, and were unable to come to a consensus of whether to recommend his application for privileges. Instead, medical staff forwarded Dr. Johnson's application to the Willapa Board for its review.

1   The Board informed Dr. Johnson that Willapa would not grant him staff privileges, at least in part because Dr. Johnson's answers in his application were allegedly "vague, misleading, and not truthful." *Id.* at 61. Among the allegedly vague, misleading, or untruthful answers in Dr. Johnson's application and subsequent communications with Willapa were: (1) his failure to include date, site, and the name of the person who suspended Dr. Johnson on December 21, 2005; (2) his failure to include Grays Harbor as currently having privileges; and (3) his informing Willapa staff that he was an "applicant physician" at Grays Harbor, when in fact he was not. The letter also informed Dr. Johnson that he could appeal the Board's decision.

Dr. Johnson responded to this letter and sent a letter of protest suggesting that Willapa had failed to follow its bylaws and requested a hearing. In his letter, Plaintiff requested that Willapa do the following: reverse its decision not to reappoint him and reappoint him to the "courtesy/contracted emergency physician status," stop deviating from the bylaws, refrain from performing deviating activity, and publicly apologize for the infringement of Dr. Johnson's rights. Dkt. 44 at 19. Willapa agreed with Dr. Johnson's claim that they had not followed their bylaws. Rather than offer Dr. Johnson a hearing, Willapa granted Dr. Johnson the requested privileges through the calender year 2007, and informed Dr. Johnson that, should he "wish to apply for courtesy staff privileges thereafter, [he could] pursue the re-application process." Dkt. 46 at 59. According to Dr. Johnson's response to Defendants' motion for summary judgment, Willapa "did not <u>reverse</u> its final action denying Plaintiff reappointment to the Hospital medical staff." Dkt. 44 at 4 (emphasis in original).[2]

---

[2] Dr. Johnson's statement that the Board "did not reverse its [December of 2006] decision" denying the reappointment of his privileges is perplexing. In his response to Defendants' motion for summary judgment, Dr. Johnson included the Board's January 31, 2007, Willapa letter informing Dr. Johnson that his privileges were being granted through the 2007 calender year. *See* Dkt. 46 at 59. In support of his statement that the Board "did not reverse its decision," Dr. Johnson cites a letter that was dated *before* the January 31, 2007, letter: the December 29, 2006, letter from Willapa to Dr. Johnson that is discussed above. *See* Dkt. 44 at 4, *citing* Dkt. 46 at 63 and Dkt. 45. Indeed, Dr. Johnson states in his response that the hospital

ORDER - 5

## II. PROCEDURAL BACKGROUND

On July 17, 2007, Dr. Johnson filed a complaint in this Court. Dkt. 1. On August 1, 2007, Dr. Johnson filed a first amended complaint seeking declaratory, injunctive and equitable relief, compensatory and punitive damages, and attorneys' fees and costs for (1) racial discrimination under 42 U.S.C. § 1981; (2) conspiracy pursuant to 42 U.S.C. § 1985, (3) deprivation of rights pursuant to 42 U.S.C. § 1983, (4) defamation of character under 42 U.S.C. § 1983 and RCW 9.58.010, (5) impairing the obligation of a contract pursuant to Article 1, Section 10 of the United States Constitution, and (6) negligence pursuant to RCW 5.40.050, RCW 70.41.23, RCW 70.43.010, and Article 1, Section 10 of the United States Constitution. Dkt. 13.

Apparently, Dr. Johnson held privileges at Willapa at the time he filed his complaint in this Court. In his response to Defendants' motion for summary judgment, Dr. Johnson included the "Verbatim Report of Proceedings of Fair Hearing," which was held on February 11, 2008, at Willapa. According to the transcript of this hearing, Dr. Johnson again applied for reappointment in September of 2007, and his application was denied in December of 2007. Dkt. 46 at 66 and 72.

On August 8, 2008, Defendants moved for summary judgment, seeking dismissal of all of Dr. Johnson's claims. Dkt. 37. Dr. Johnson filed a response on September 1, 2007 (Dkt. 44), and Defendants replied on September 5, 2007 (Dkt. 49).

On September 8, 2008, Dr. Johnson filed a three-page surreply supported by a nine-page declaration which included exhibits. Dr. Johnson moves to strike (1) Defendants' reply to Dr. Johnson's racial discrimination cause of action on the basis that Dr. Johnson provided evidence of discrimination, (2) Defendants' statement that Dr.

---

granted him privileges. The Court presumes that Dr. Johnson's statement is based on semantics, and that his contention is that the Board did not refer to its decision to grant him privileges through 2007 as a "reversal" of its initial decision in December of 2006 not to grant him privileges. It does not appear that Dr. Johnson is actually arguing that he was not, in fact, granted privileges through 2007, as he has not maintained that Willapa failed to by abide by the terms of the January 31, 2007, letter. *See also* Dkt. 46, 65-83 (hearing where Dr. Johnson challenges the denial of his privileges, for which he apparently re-applied in September of 2007).

ORDER - 6

1 Johnson wrongly cited a case, (3) Defendants' reply to Dr. Johnson's conspiracy cause of action because Defendants did not move for summary judgment on this claim, and (4) Defendants' reply to Dr. Johnson's action under § 1983 because Dr. Johnson provided evidence of this claim.

Defendants objected to Dr. Johnson's surreply, contending (1) the surreply was over three pages, (2) the surreply was untimely, and (3) Dr. Johnson provided additional factual and legal argument not included in his response to Defendants' motion for summary judgment. Dkt. 52.

## III. DISCUSSION

### A. PLAINTIFF'S SURREPLY

Under Local Rule 7(g), a party may file a surreply requesting that the Court strike material in the opposing party's reply. The surreply must be filed within five judicial days of the noting date, and shall be strictly limited to addressing the request to strike. LR 7(g)(2). "The surreply shall not exceed three pages." LR 7(g)(3).

Dr. Johnson's surreply was timely. Although Dr. Johnson's surreply improperly brings legal and factual arguments, and improperly included a nine-page declaration, the Court has considered Dr. Johnson's surreply.

The Court denies Dr. Johnson's request to strike Defendants' legal arguments. Mere disagreement with legal argument is not a proper basis for moving to strike. Dr. Johnson's request to strike Defendants' reply as to Dr. Johnson's conspiracy claim is also denied. Defendants moved to dismiss all of Dr. Johnson's claims in their summary judgment motion.

### B. SUMMARY JUDGMENT STANDARD

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which

the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt"). *See also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The Court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630. The Court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson, supra)*. Conclusory, nonspecific statements in affidavits are not sufficient, and missing facts will not be presumed. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990).

**C.     42 U.S.C. § 1981**

Dr. Johnson's second cause of action is race discrimination in violation of 42 U.S.C. § 1981, which provides that "[a]ll persons . . . shall have the same right . . . to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens . . . ." 42 U.S.C. § 1981(a). In analyzing claims under 42 U.S.C. § 1981, courts use the framework of Title VII, including the *McDonnell-Douglas* burden-shifting

analysis. *Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1028 n.5 (9th Cir. 2006).

In the Ninth Circuit, there are two methods of establishing a prima facie case of disparate treatment under Title VII. First, Plaintiff may establish his case by submitting direct evidence of discriminatory intent. *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994). This requires the plaintiff to offer evidence which "gives rise to an inference of unlawful discrimination. *Id.* (citation omitted). Second, Plaintiff may establish a prima facie case by showing that he is entitled to a presumption of discrimination arising from factors such as those set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973).

Here, Dr. Johnson has provided no evidence that could give rise to an inference of unlawful discrimination. Dr. Johnson alleges that Willapa's failure to follow its bylaws is evidence of discrimination. A failure to follow bylaws, without more, is not evidence that could give rise to an inference of discrimination. Dr. Johnson's claim may be based on a presumption of discrimination, as reflected in his second cause of action:

> By denying PLAINTIFF staff membership, and clinical privileges, a contractual relationship, DEFENDANTS et al [sic], have violated 42 U.S.C. § 1981.
> By not adhering to WILLAPA medical staff bylaws, and by not allowing PLAINTIFF a hearing or equal protection under the law, DEFENDANTS et al [sic], have violated 42 U.S.C. § 1981.

Dkt. 13 at 7.

The *McDonnell-Douglas* burden-shifting analysis has three parts. First, a plaintiff must present a prima facie case. To make out a prima facie case of racial discrimination on the basis of disparate treatment, Dr. Johnson must show that (1) he belonged to a protected class; (2) he was performing his job in a satisfactory manner; (3) he was subjected to an adverse employment action; and (4) similarly situated employees not in his protected class received more favorable treatment. *Kang v. U. Lim America, Inc.*, 296 F.3d 810, 818 (9th Cir. 2002); *Cornwell*, 439 F.3d at 1028. If Dr. Johnson succeeds in

1 presenting a prima facie case, there is a rebuttable presumption of discrimination.
2 *Cornwell*, 439 F.3d at 1028.

3 At the second step of the analysis, the burden shifts to Defendants to articulate legitimate, non-discriminatory reasons for the adverse employment action. *Manatt v. Bank of America, NA*, 339 F.3d 792, 800 (9th Cir. 2003). If Defendants successfully carry this burden of production, Dr. Johnson bears the ultimate burden of persuading the trier of fact that the reason was merely a pretext for a discriminatory motive at the third step of the analysis. *Id.* Even though a plaintiff must prove each element of the *McDonnell Douglas* test, the requisite degree of proof to withstand summary judgment is "minimal and does not even need to rise to the level of a preponderance of evidence." *Villiarimo v. Aloha Island Air, Inc.,* 281 F.3d 1054, 1062 (9th Cir. 2002).

At the outset, the Court notes that it is not entirely clear from the record what adverse employment actions are being alleged. Dr. Johnson's complaint incorporates the same 22 statements from the factual background section into each of his eight causes of action, so it is difficult to discern which facts apply to any cause of action. Dr. Johnson's complaint includes an allegation that Defendants have not placed him on the emergency schedule "for over two years," without indicating any specific years, and states that white doctors who have staff privileges "have all been placed on the emergency room schedule during [the same years]." Dkt. 13 at 5. In his response to Defendants' motion for summary judgment, Dr. Johnson appears to allege that the adverse employment action was Defendants' failure to provide a notice of hearing before "they made the final decision to not reappoint Plaintiff." Dkt. 44 at 7.

For purposes of summary judgment, the parties apparently do not dispute whether Dr. Johnson was a member of a protected class. The parties' primary dispute is whether Dr. Johnson's performance was satisfactory, whether similarly situated doctors outside of Dr. Johnson's protected class received more favorable treatment, and whether Defendants' proffered explanations were pretextual.

For the reasons below, the Court grants Defendants' motion for summary judgment as to Dr. Johnson's claim under § 1981.

**1.      Board's Decision to Deny Privileges on December 29, 2006**

Defendants did not address the issue of whether Dr. Johnson actually suffered an adverse employment action in their motion for summary judgment as to the Board's decision to deny him privileges. For purposes of Defendants' summary judgment motion only, the Court assumes Dr. Johnson suffered an adverse employment action when the Board denied him privileges in December 2006.

There is no dispute that Dr. Johnson included answers on his application for privileges at Willapa that were inaccurate. In his response to Defendants' motion for summary judgment, Dr. Johnson does not dispute having answered the application questions as described in Section I above. Rather, Dr. Johnson maintains that he was not given the proper amount of time to gather the necessary information to answer the questions. According to the record, Dr. Johnson did not provide correct information to Willapa until *at least* over four months after he submitted his application. In May of 2006, he provided some information to Willapa concerning his application, and it was not until December of 2006 when he disclosed the Department of Health investigations to Willapa. It appears that Dr. Johnson only disclosed the requested information after Willapa representatives challenged his answers to the questions on the application.

Dr. Johnson states in his declaration that he did disclose investigations of misconduct to Willapa, yet he offers no supporting evidence, nor does he explain why he answered "no" to this question on his application. Dr. Johnson's explanation that he was "rushed" and therefore could not have provided the correct information is not convincing, as the application required a simple "Yes/No" answer regarding whether Dr. Johnson was under investigation.

Dr. Johnson's false and misleading representations are set out in Section I of this order. Defendants have provided undisputed documentation that supports Defendants'

allegations that Dr. Johnson was not truthful in the answers provided in his application. These answers are summarized in Defendants' motion for summary judgment:

> a) [Dr. Johnson] failed to disclose that his staff privileges at Grays Harbor County Hospital had been suspended twice.
> b) [Dr. Johnson] failed to disclose that his privileges at Grays Harbor County Hospital were to be reinstated subject to conditions.
> c) [Dr. Johnson] failed to disclose that he was being investigated by the Department of Health on four complaints of unprofessional conduct.
> d) [Dr. Johnson] represented the status of his Grays Harbor County Hospital privileges as "Applicant Physician," when no such category of privileges exists under the hospital bylaws.

Dkt. 37 at 7.

In addition, Dr. Johnson has provided no evidence of similarly situated individuals being treated differently, beyond his own belief that he was denied privileges because of his race. Dkt. 13 at 5.

Dr. Johnson appears to instead base his § 1981 claim on the basis that Defendants' failure to provide a hearing prior to their decision not to grant him privileges is evidence of discrimination. As discussed above, a failure to follow bylaws, without more, is not evidence that could give rise to an inference of discrimination. The Court also notes that when Dr. Johnson challenged Willapa's denial of his privileges, Willapa granted him privileges through 2007.

**2. Defendants' Alleged Refusal to Place Dr. Johnson in the Emergency Room**

Defendants did not address the emergency room claim in its motion for summary judgment, but Dr. Johnson raises this issue in his surreply. Even though the Court has stricken legal arguments in the surreply, it will consider this issue so as not to prejudice Plaintiff.

Dr. Johnson has alleged racial discrimination because "Defendants have not placed Plaintiff on the emergency schedule for over two years." *Id*. This claim fails because (1) Dr. Johnson has failed to provide evidence that he was under contract to perform emergency room services; (2) even assuming he was under such a contract, Dr. Johnson fails to demonstrate that scheduling decisions made by the hospital not to assign him to

ORDER - 12

the emergency room constitutes an adverse employment action; and (3) Dr. Johnson failed to demonstrate that similarly situated persons not in Dr. Johnson's protected class received more favorable treatment, beyond Dr. Johnson's own statement that "white doctors who have staff privileges have all been placed on the emergency room schedule during the past two years." *Id*. Dr. Johnson does not bolster his claim with the exhibits he improperly disclosed with his surreply. In this surreply, Dr. Johnson included one Willapa schedule, which indicated that he was assigned to the emergency room, and argues that the schedule was evidence of discrimination because it was the last time he was scheduled to work in the emergency room. Dr. Johnson also stated that all the other doctors were white. This does not constitute evidence of discrimination, nor does it demonstrate that similarly situated individuals received more favorable treatment.

**D.  CONSPIRACY**

Dr. Johnson alleges that Defendants conspired to deprive him of his rights in violation of 42 U.S.C. § 1985. Dkt. 13 at 7.

> A civil rights conspiracy claim includes four elements: (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of this conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.

*Keenan v. Allan*, 889 F. Supp. 1320, 1364 (E.D. Wash. 1995) (citation omitted).

Dr. Johnson has provided no admissible evidence that Defendants conspired against him on the basis of his race. This claim is without merit, and is dismissed.

**E.  42 U.S.C. § 1983**

Dr. Johnson claims that "by failing to follow Willapa medical staff bylaws, and by not allowing Plaintiff a hearing, or equal protection under the law, Defendants . . . have violated 42 U.S.C. § 1983." Dkt. 13 at 8. In his response, Dr. Johnson states the following:

> Though [Willapa] agreed with Plaintiff's claim that it did not follow its bylaws, it refused to honor all five of Plaintiff's requests [see Section I above]. Instead, [Willapa] granted subsequent privileges to Plaintiff, erroneously believing that would correct its actions of prohibiting Plaintiff

ORDER - 13

>due process, violating Bylaws and state laws, as well as defaming Plaintiff. In order to ensure protection of his civil rights and equal protection under the laws, Plaintiff was forced to bring this action.

Dkt. 44 at 19.

Defendants contend that there is no factual basis for this claim, and that because Willapa decided to grant Dr. Johnson the requested privileges in January 2007, the due process provisions of the bylaws are not applicable. Dkt. 37 at 9; Dkt. 49 at 4.

In order to state a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate that (l) the conduct complained of was committed by a person acting under color of state law and that (2) the conduct deprived a person of a right, privilege, or immunity secured by the Constitution or by the laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled on other grounds by Daniels v. Williams,* 474 U.S. 327 (1986). Section 1983 is the appropriate remedy only if both elements are satisfied. *Haygood v. Younger,* 769 F.2d 1350, 1354 (9th Cir. 1985). In addition, a plaintiff must allege facts demonstrating that individual defendants caused, or personally participated in causing, the alleged harm. *Arnold v. IBM*, 637 F.2d 1350, 1355 (9th Cir. 1981). A defendant cannot be held liable under 42 U.S.C. § 1983 solely on the basis of supervisory responsibility or position. *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 694 n.58 (1978).

Even if Dr. Johnson were able to demonstrate that Defendants are subject to liability under § 1983 by acting under the color of state law, his claim nevertheless fails because he has failed to allege a deprivation of a right, privilege, or immunity under the Constitution. Dr. Johnson challenged Willapa's December 2006 decision not to extend him privileges, and in January 2007, Willapa granted him privileges through 2007. Thus, Dr. Johnson was able to appeal Willapa's initial decision not to grant him privileges, and rather than hold a hearing, Willapa instead granted Dr. Johnson the requested privileges.

1 No hearing was necessary because there was no deprivation of any conceivable property
2 interest.³

3 The Court grants Defendants' motion for summary judgment as to Dr. Johnson's
4 claim under § 1983.

## F. DEFAMATION OF CHARACTER

In his complaint, Dr. Johnson incorporates all of the statements made in his facts section in support of his defamation claim under § 1983 and RCW 9.58.010. In his response, Dr. Johnson alleges defamation based on Defendants' December 2006 letter informing him that Willapa would not grant him privileges based on Dr. Johnson's "vague, misleading, and [untruthful]" answers on his application. Dkt. 44 at 12. Dr. Johnson states that this "vague, misleading, and untrue information" came from Grays Harbor and not from Dr. Johnson.

To the extent that Dr. Johnson's defamation claim is based upon § 1983, summary judgment is proper as discussed in Section E.

Dr. Johnson cites RCW 9.58.010 in support of his defamation claim. This is a criminal statute. The Court presumes that Dr. Johnson intends to assert a common law defamation claim against Defendants.

To survive summary judgment, Dr. Johnson must create a genuine issue of material fact as to each of the following elements: (1) falsity of the communication, (2) lack of privilege, (3) fault, and (4) damages. *Mohr v. Grant*, 153 Wn.2d 812, 822 (2005). The falsity prong is satisfied with evidence that a statement is provably false or leaves a false impression. Defamation also requires a showing that the false statements were publicized to a third party. *See Mark v. Seattle Times*, 96 Wn.2d 473, 487 (1981).

Dr. Johnson has failed to demonstrate that the allegedly defamatory December 2006 letter was published to any third party. Dr. Johnson's claims that the defamation

---

³ After Dr. Johnson filed this action, he apparently applied for reappointment, and Willapa held a hearing regarding his application, which Dr. Johnson attended, in February 2008. *See* Dkt. 46, 65-83.

ORDER - 15

arose from false statements from Grays Harbor do not apply to his claims against the Defendants in this case.[4]

The Court grants Defendants' motion for summary judgment as to Dr. Johnson's defamation claims.

**G.    IMPAIRMENT OF CONTRACT**

Dr. Johnson claims that "by failing to follow Willapa medical staff bylaws, Defendants . . . impaired the obligation of the Courtesy/Emergency Room staff contract it had with Plaintiff," in violation of Article I, Section 10 of the United States Constitution. Dkt. 13 at 8.

"It has been settled by a long line of decisions, that the provision of Section 10, article 1, of the federal Constitution, protecting the obligation of contracts against state action, is directed only against the impairment of *legislation* and not by judgment of courts." *Tidal Oil Co. v. Flanagan*, 263 U.S. 444, 451 (1924), *see also Birkenwald Distrib. Co. v. Heublein, Inc.*, 55 Wn. App. 1, 6 (1989) ("only a legislature can 'pass' a 'law' impairing contractual obligations[,] . . . only state legislation implicates the contract clause.").

Because Dr. Johnson fails to identify any state legislative action that allegedly impaired the obligation of contract, this claim fails. Willapa's decision in December 2006 to not reappoint Dr. Johnson is not a legislative action. Therefore, the Court grants Defendants' summary judgment motion as to this claim.

**H.    NEGLIGENCE**

Dr. Johnson alleges negligence pursuant to RCW 5.40.050 against Defendants, based on Defendants' alleged negligent failure to adhere to its bylaws. Dr. Johnson alleges that Defendants breached its duty to credential him pursuant to RCW 70.41.230 and 70.43.010, and the Constitution.

---

[4] This Court dismissed Dr. Johnson's defamation claims against Grays Harbor in a separate action. *See* C06-5502BHS, Dkt. 266, 28-33.

ORDER - 16

To support a claim for negligence, a party must prove (1) the existence of a duty owed to the injured party; (2) a breach of that duty; (3) a resulting injury; and (4) that the claimed breach is the proximate cause of the injury. *Hansen v. Friend*, 118 Wn.2d 476, 485 (1992). Whether there is a duty owed to the injured party is a question of law. *Patrick v. Sferra*, 70 Wn. App. 676, 683 (1993). Dr. Johnson fails to establish that physicians owe one another a duty with respect to privileges. *But see Pedroza v. Bryant*, 101 Wn.2d 226 (1984) (hospitals owe a duty to exercise reasonable care in granting and renewing staff privileges); *Ritter v. Board of Com'rs of Adams County Public Hospital Dist. No. 1*, 96 Wn.2d 503 (1981) (in suit against hospital, summary suspension that contravened standards upon which physicians were entitled to rely was improper). To the extent that Dr. Johnson's negligence claims are premised upon such a duty, summary judgment is therefore proper.

In addition, Dr. Johnson offers no basis for his negligence claim under RCW 70.41.230 and 70.43.010. Those statutes do not place a "duty" on the hospital to credential Plaintiff.

Dr. Johnson argues that by "violating bylaw procedures including failure to provide notice" of a hearing, Willapa acted with negligence. Dr. Johnson offers no legal authority that supports a conclusion that a hospital acts with negligence when it denies a physician privileges, and subsequently grants those privileges after challenged by the physician. The Court grants Defendants' summary judgment motion as to these claims.

**I.    PRELIMINARY INJUNCTION**

Dr. Johnson's request for a preliminary injunction is denied. It appears that, at the time he filed this action, he held privileges at Willapa. Thus, there is nothing to enjoin.

**IV. ORDER**

Therefore, it is hereby **ORDERED** that Defendants' Motion for Summary Judgment (Dkt. 37) is **GRANTED**. Plaintiffs' claims against all defendants are **DISMISSED WITH PREJUDICE**.

DATED this 16th day of October, 2008.

_____
BENJAMIN H. SETTLE
United States District Judge